AO 106 (Rev. 04/10)  Application for a Search Warrant

## UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | ) Case No. |
| one Black Samsung, Model Galaxy S9+<br>IMEI: 356420091401455 | ) ) |

**FILED**

JAN 1 8 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

**19MJ0256**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 | Importation of a Controlled Substance; |

The application is based on these facts:

See attached Affidavit of Special Agent Miriam Marcais

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Miriam Marcais, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____1/18/19_____

*Judge's signature*

City and state:  San Diego, CA

Hon. Linda Lopez
*Printed name and title*

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

One black Samsung, Model: Galaxy S9+; IMEI# 356420091401455;

("TARGET TELEPHONE #1")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B-1
### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2018, up to and including September 22, 2018.

a. tending to indicate efforts to import cocaine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Miriam Marcais, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.   I make this affidavit in support of an applications for search warrants in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations Special Agents for the following electronic devices:

   a. one black Samsung Galaxy S9+ with IMEI# 356420091401455 ("TARGET TELEPHONE #1"), described in Attachment A-1 (incorporated herein by reference);

   b. one white Samsung, model SM-G610M with IMEI# 351813092406009 ("TARGET TELEPHONE #2"), described in Attachment A-2 (incorporated herein by reference);

   c. one black Alcatel, Model: 5027B; MEID HEX: 3579070378723 ("TARGET TELEPHONE #3"), described in Attachment A-3 (incorporated herein by reference); and

   d. one black LG, Model: LM-X210MA with IMEI: 357603090108689 ("TARGET TELEPHONE #4"), described in Attachment A-4 (incorporated herein by reference)

(collectively the "TARGET TELEPHONES"), which were seized from Peter ALONZO and Pedro ALONZO RAMIREZ on September 22, 2018, incident to their arrest for importation of cocaine at the Otay Mesa, California Port of Entry.

2.   TARGET TELEPHONE #1 and TARGET TELEPHONE #2 were seized from Pedro ALONZO RAMIREZ.   TARGET TELEPHONE #3 and TARGET TELEPHONE #4 were seized from Peter ALONZO.

3.   The TARGET TELEPHONES are currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and

1  Customs Enforcement, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized
2  Property Vault).

3      4.      I seek authority to search the TARGET TELEPHONES for evidence of
4  crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as
5  described in Attachments B-1 and B-2 (incorporated herein by reference) for the time
6  period from June 1, 2018, through September 22, 2018.

7                          **TRAINING AND EXPERIENCE**

8      5.      I am a Special Agent with the Department of Homeland Security, Homeland
9  Security Investigations ("HSI") and have been so employed since November 2009. I am a
10  graduate of the Criminal Investigator Course and Immigration and Customs Enforcement,
11  Special Agent Training Program at the Federal Law Enforcement Training Center. I have
12  a Master's Degree in International Relations from the University of Chicago and a
13  Bachelor's Degree in Political Science from Virginia Wesleyan College. I am presently
14  assigned to the national security group in San Diego, CA. My duties include investigating
15  the illicit trafficking of controlled substances into the United States of America. I am also
16  cross designated by the United States Drug Enforcement Administration ("DEA") to
17  conduct narcotics investigations and enforce the provisions of the Federal Controlled
18  Substance Act.

19      6.      As an HSI Special Agent, my duties include investigating the illegal
20  importation and trafficking of controlled substances. I have received training in
21  investigating various controlled substances, including the importation of controlled
22  substances and controlled substance trafficking. I have also had training in the methods
23  used by controlled substance traffickers to import and distribute drugs and to operate
24  detailed distribution networks. Since becoming an HSI Special Agent, I have been involved
25  in over one hundred narcotics trafficking investigations involving the importation,
26  distribution and sale of large quantities of controlled substances. I have also worked with

27
28  AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR        2
    SEARCH WARRANTS

and conferred with other agents with extensive experience in narcotics smuggling investigations. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations; I have worked as a co-case agent, assisting in the investigation of drug-related investigations, I have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; I have participated in the execution of search warrants; I have initiated and conducted international and domestic controlled deliveries of narcotics, I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances; and I have interviewed defendants, witnesses and informants relating to the illegal trafficking of controlled substances. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

7.     Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging cell phone applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.

8.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the

1  opinions stated below are shared by them.  Further, I have personal knowledge of the
2  following facts, or have had them related to me by persons mentioned in this affidavit.

3      9.     Based upon my training and experience as a Special Agent, and consultations
4  with law enforcement officers experienced in controlled substance smuggling
5  investigations, and all the facts and opinions set forth in this affidavit, I submit the
6  following:

7      a.     Drug smugglers will use cellular telephones because they are mobile and
8  they have instant access to telephone calls, text, WhatsApp and other texting
9  applications, the internet, video, social networking sites, and voice messages;

10     b.     Drug smugglers will use WhatsApp and other encrypted texting
11  applications on cellular telephones to communicate because they believe that these
12  services insulate their communications from law enforcement;

13     c.     Drug smugglers will use cellular telephones because they are able to
14  actively monitor the progress of their illegal cargo while the conveyance is in transit.

15     d.     Drug smugglers and their accomplices will use cellular telephones because
16  they can easily arrange and/or determine what time their illegal cargo will arrive at
17  predetermined locations.

18     e.     Drug smugglers will use cellular telephones to direct drivers to
19  synchronize an exact drop off and/or pick up time of their illegal cargo.

20     f.     Drug smugglers will use cellular telephones to notify or warn their
21  accomplices of law enforcement activity including the presence and location of marked
22  and unmarked units, as well as the operational status of Border Patrol checkpoints.

23     g.     Drug smugglers will use cellular telephones to communicate with each
24  other regarding payment and other financial arrangements relating to the transportation
25  of their illegal cargo.

26

27

28  AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR     4
    SEARCH WARRANTS

10.     The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience.  All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## **FACTS SUPPORTING PROBABLE CAUSE**

11.     On September 22, 2018, at approximately 02:05 hours, Peter ALONZO, a United States citizen, and Pedro ALONZO RAMIREZ, a lawful permanent resident, applied for entry into the United States from Mexico through the Otay Mesa, California, Port of Entry (POE) in the vehicle lanes.  Peter ALONZO was the driver and registered owner of a grey 2017 Nissan Sentra bearing California license plates 7XUP053 ("the vehicle"). Pedro ALONZO RAMIREZ was the passenger in the vehicle and the son of Peter ALONZO.

12.     U.S. Customs and Border Protection Officer ("CBPO") A. Ackley conducted the primary inspection of Peter ALONZO, Pedro ALONZO RAMIREZ, and the vehicle. Peter ALONZO told CBPO Ackley that his intended destination within the United States was Los Angeles, California. Peter ALONZO gave two negative customs declarations to CBPO Ackley. CBPO Ackley inspected the vehicle and observed a rectangular shaped package concealed in the left rear quarter panel area of the trunk. The vehicle was referred to secondary for further inspection.

1    13.    At approximately 02:10 hours, CBPO M. Manders was assigned as a Canine
2  Enforcement Officer at the Otay Mesa POE. CBPO Manders screened the vehicle with his
3  Narcotics Detection Dog, who alerted to a trained odor emitting from the seam of the trunk
4  of the vehicle.

5    14.    At approximately 02:20 hours, CBPO G. Aguiar was assigned to the vehicle
6  x-ray machines at the Otay Mesa POE. CBPO Aguiar screened the vehicle and observed
7  anomalies inside the driver's side quarter panels of the vehicle.

8    15.    CBPO K. Gaspar conducted the secondary inspection of the vehicle.  During
9  the secondary inspection, CBPO Gaspar observed packages concealed in the left rear
10  quarter panel. CBPO Gaspar removed a total of eleven (11) packages, the contents of which
11  contained a white powdery substance that field tested positive for cocaine. The combined
12  weight of the packages was approximately 13.36  kilograms (29.39 pounds).

13    16.    Officers placed Peter ALONZO and Pedro ALONZO RAMIREZ under arrest
14  for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of
15  a Controlled Substance.  Peter ALONZO and Pedro ALONZO RAMIREZ have been
16  charged with importation of a controlled substance (cocaine) in violation of Title 21,
17  United States Code sections 952 and 960 in the Southern District of California in case
18  number 18-CR-4436-JAH.  A motion hearing in this case is set for February 4, 2019, in
19  front of the Honorable John A. Houston.

20    17.    At the time of their arrest, Pedro ALONZO RAMIREZ was in possession of
21  the TARGET TELEPHONES # 1 and #2, and Peter ALONZO was in possession of the
22  TARGET TELEPHONES # 3 and #4.  Officers seized the TARGET TELEPHONES
23  incident to their arrest.  Although agents attempted to download information from the
24  TARGET TELEPHONES at the Otay Mesa, California, POE incident to Peter ALONZO's
25  and Pedro ALONZO RAMIREZ's arrest and pursuant to border search authority, I do not
26  rely on any information derived from the search for purposes of determining whether

27

1  probable cause exists to believe that ALONZO and ALONZO RAMIREZ used the
2  TARGET TELEPHONES to facilitate the offenses of importing cocaine or that evidence
3  and instrumentalities of illegal activity committed by ALONZO and ALONZO RAMIREZ
4  continue to exist on the TARGET TELEPHONES.

5  18.    On September 22, 2018, post arrest, Peter ALONZO waived his Miranda
6  rights and stated that his son Pedro ALONZO RAMIREZ called him at midnight asking
7  for a ride to Los Angeles, California. Peter ALONZO stated that he was going to Figueroa
8  Street in Los Angeles. Peter ALONZO stated that he had been giving Pedro ALONZO
9  RAMIREZ rides into the United States for approximately one week because his son's car
10 wasn't working.

11 19.    According to certified California Department of Motor Vehicle documents,
12 Peter ALONZO applied for registration of the 2017 Nissan Sentra on March 8, 2017. The
13 vehicle's first border crossing occurred on April 21, 2017.

14 20.    California Department of Motor Vehicles documents reveal that on August 2,
15 2018, Pedro ALONZO RAMIREZ registered a 2014 Chevy Camaro with California
16 license plate 8FFV043. According to the DMV records, Pedro ALONZO RAMIREZ
17 purchased the Camaro in June 2018. He first crossed the border in the Camaro on June 21,
18 2018, at the Otay Mesa POE. Pedro ALONZO RAMIREZ's last border crossing in the
19 Camaro occurred on September 12, 2018, ten days prior to his arrest.

20 21.    Pedro ALONZO RAMIREZ's first border crossing in the Nissan Sentra where
21 cocaine was found occurred on May 11, 2017. Pedro ALONZO RAMIREZ has
22 approximately twenty-five (25) border crossings in the Nissan Sentra prior to his arrest on
23 September 22, 2018. Between June 1, 2018, and the day of his arrest, Pedro ALONZO
24 RAMIREZ had crossed the border approximately 62 times in 3 different vehicles. Pedro
25 ALONZO RAMIREZ's most recent crossings in the Nissan Sentra were on September 20,
26 September 17, September 13, June 8, June 7, June 5, June 2, and June 1, 2018.

27
28 AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR   7
   SEARCH WARRANTS

22.    Based upon my experience and investigation in this case, I believe that Peter ALONZO, Pedro ALONZO RAMIREZ, as well as other persons as yet unknown, were involved in an on-going conspiracy to import cocaine or some prohibited narcotics. Based on my experience investigating narcotics smugglers, I also believe that Peter ALONZO and Pedro ALONZO RAMIREZ may have used the TARGET TELEPHONES to coordinate with co-conspirators regarding the importation and delivery of the cocaine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

23.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ALONZO, ALONZO RAMIREZ, and their co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the TARGET TELEPHONES have been in the custody of HSI since the date of ALONZO's and ALONZO RAMIREZ's arrest, I believe that this information continues to be stored on the TARGET TELEPHONES.

24.    Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure

1  success in getting their valuable cargo to its destination within the United States.  In this
2  case, evidence supports that probable cause exists to search the TARGET TELEPHONES
3  for information dating back to June 1, 2018.  This is based upon a review of certified DMV
4  records, as well as Defendants' crossing history.

5  **SEARCH METHODOLOGY**

6          25.       It is not possible to determine, merely by knowing the cellular telephone's
7  make, model and serial number, the nature and types of services to which the device is
8  subscribed and the nature of the data stored on the device.  Cellular devices today can be
9  simple cellular telephones and text message devices, can include cameras, can serve as
10 personal digital assistants and have functions such as calendars and full address books and
11 can be mini-computers allowing for electronic mail services, web services and rudimentary
12 word processing.  An increasing number of cellular service providers now allow for their
13 subscribers to access their device over the internet and remotely destroy all of the data
14 contained on the device.  For that reason, the device may only be powered in a secure
15 environment or, if possible, started in "flight mode" which disables access to the network.
16 Unlike typical computers, many cellular telephones do not have hard drives or hard drive
17 equivalents and store information in volatile memory within the device or in memory cards
18 inserted into the device.  Current technology provides some solutions for acquiring some
19 of the data stored in some cellular telephone models using forensic hardware and software.
20 Even if some of the stored information on the device may be acquired forensically, not all
21 of the data subject to seizure may be so acquired.  For devices that are not subject to
22 forensic data acquisition or that have potentially relevant data stored that is not subject to
23 such acquisition, the examiner must inspect the device manually and record the process
24 and the results using digital photography.  This process is time and labor intensive and may
25 take weeks or longer.

26 //

27
28

26.     Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis.  All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months.  The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

28.     Based on all of the facts and circumstances described above, there is probable cause to believe that Peter ALONZO and Pedro ALONZO RAMIREZ used the TARGET TELEPHONES to facilitate the offense of importing cocaine or other federally-controlled substances.  The TARGET TELEPHONES were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952 and 960.

29.     There is also probable cause exists to believe that evidence and instrumentalities of illegal activity committed by Peter ALONZO and Pedro ALONZO RAMIREZ continues to exist on the TARGET TELEPHONES.

30.     Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachments B-1 through B-4 (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 through A-4 (incorporated herein).  Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR
SEARCH WARRANTS

10

1 | evidence recovery, to search the items described in Attachments A-1 through A-4, and

2 | seize the items listed in Attachments B-1 through B-4.

3

4 | MIRIAM MARCAIS

5 | HSI Special Agent

6 | Subscribed and sworn to before me this 18 day of January, 2019.

7

8 | HON. Linda Lopez

9 | United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 | AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR   11
SEARCH WARRANTS

**ATTACHMENT A-1**

PROPERTY TO BE SEARCHED

One black Samsung, Model: Galaxy S9+; IMEI# 356420091401455;

("TARGET TELEPHONE #1")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B-1
### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2018, up to and including September 22, 2018.

a. tending to indicate efforts to import cocaine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.